IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDA VALENTIN, JOEL VALENTIN, and GRACE GABLE MANOIRS, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>TOWN OF NATICK, PLANNING BOARD OF THE TOWN OF NATICK, TERESA EVANS in her official capacity as planning board member for the Town of Natick, ANDREW MEYER in his official capacity as planning board member for the Town of Natick, JULIAN MUNNICH in his official capacity as planning board member for the Town of Natick, GLEN GLATER in his official capacity as planning board member for the Town of Natick, PETER NOTTONSON in his official capacity as planning board member for the Town of Natick, NATICK HISTORICAL COMMISSION, and STEPHEN EVERS, in his official capacity as Chair of the Natick Historical Commission,<br><br>    Defendants. | Case No. 1:21-cv-10830-PBS<br><br>Judge Patti B. Saris |

**RELMAN COLFAX PLLC'S MOTION TO ENFORCE ATTORNEYS' FEES LIEN**

The law firm of Relman Colfax (the "Firm"), formerly counsel[1] for the plaintiffs, Linda Valentin, Joel Valentin, and Grace Gable Manoirs (collectively, "Plaintiffs"), hereby moves, pursuant to M.G.L. c. 221, § 50, for an order determining and enforcing the Attorneys' lien in the

---

[1] The Court has not ruled on the Firm's Motion for Leave to Withdraw. *See* Dkt. 163. Nonetheless, the Firm understands that it no longer represents Plaintiffs now that the parties have a fully executed settlement agreement and the Court's deadline for reopening the case upon good cause shown has expired. *See* Dkt. 162.

amount of $400,000.00, as approximately 46% of the balance owed to the Firm on account of fees and expenses incurred on behalf of the Plaintiffs.[2]

## PROCEDURAL BACKGROUND

Plaintiffs retained Relman Colfax as counsel for the above-captioned litigation on March 14, 2021. As this Court is aware, prior to reaching a settlement, the case proceeded through two dispositive motions (motion to dismiss and motion for summary judgment), extensive discovery, multiple mediations, and substantial pretrial work.

At argument on Defendants' motion for summary judgment, the Court indicated that at least some of Plaintiffs' claims would survive summary judgment and set a December 4, 2023 trial date. *See* Dkt. 133. On October 6, 2023, the Court granted the Parties' joint motion to stay the trial dates to allow for a possible resolution through mediation. *See* Dkt. 129. After the first round of mediation, the Court reset the trial date for January 22, 2024. *See* Dkt. 136.

On December 1, 2024, the Firm filed an emergency motion for leave to withdraw as counsel for Plaintiffs due to an irreconcilable breakdown in the attorney–client relationship and nonpayment of fees. *See* Dkt. 142. The Court denied the Firm's motion without prejudice, *see* Dkt. 148, and reset the trial date to March 11, 2024, *see* Dkt. 149. The Parties attended a second mediation session on January 4, 2024, and, on January 16, 2024, all Parties accepted a mediator's proposal to settle the case for $1.6 million. Upon receiving the Parties' notice of the settlement in principle, the Court administratively dismissed the case with leave to reopen upon good cause shown by March 19, 2024. *See* Dkt. 162. As the parties worked to finalize the settlement agreement, the attorney–client relationship between the Firm and Plaintiffs continued to

---

[2] The Firm has not consulted with Defense counsel under Local Rule 7.1(a)(2) because Defense counsel has no interest in the resolution of this motion. The Firm has conferred with mediation counsel for Plaintiffs in an attempt to resolve this dispute prior to filing this motion.

deteriorate. It became apparent that the Firm's continued presence as counsel was an obstacle to settlement. The Firm accordingly notified Plaintiffs of the termination of representation and filed a second motion for leave to withdraw, *see* Dkt. 163. Plaintiffs conditionally opposed that motion on the grounds that settlement talks may fail, and the case may need to be reopened. *See* Dkt. 164. The settlement agreement between the parties was fully executed on March 20, 2024, mooting the Firm's motion for leave to withdraw.

## LEGAL STANDARD

Massachusetts G.L. c. 221 § 50 provides that an "attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom." An "inchoate lien" arises in the favor of an attorney upon filing a complaint, and "becomes choate when a judgment, decree or other order is entered in the client's favor." *In re Leading Edge Prod., Inc.*, 121 B.R. 128, 131 (Bankr. D. Mass. 1990), *aff'd*, No. CIV. A. 90-13112-Z, 1991 WL 97459 (D. Mass. May 28, 1991). A charging "lien may . . . attach to proceeds derived from a stipulation of dismissal filed pursuant to an agreement to settle a claim in return for the payment of money." *Ne. Avionics, Inc. v. City of Westfield*, 827 N.E.2d 721, 725 (Mass. App. Ct. 2005). This Court retains ancillary jurisdiction over the Firm's charging lien even though the parties have executed an agreement resolving the case in full. *See In re Leading Edge Products*, 121 B.R. 128 (determining counsel's lien after parties executed mutual releases).

## ARGUMENT

The Firm provided high-caliber legal representation of Plaintiffs throughout the course of litigation, overcoming two dispositive motions and spending hundreds of hours in discovery

3

building a strong evidentiary record for summary judgment and trial. The Firm's work resulted in significant victories for the Plaintiffs, leading to three reported decisions that have meaningfully developed the law in the First Circuit. Due to the quality of the Firm's advocacy—repeatedly recognized on the record by the Court—Plaintiffs were ultimately able to obtain one of the largest settlements in a fair housing case in the First Circuit.[3]

The Firm entered into a written engagement agreement with Plaintiffs on March 14, 2021. The agreement is attached as Exhibit A to the Declaration of Michael Allen (Exhibit 1). Under the terms of the retainer, Plaintiffs agreed to compensate the Firm time on an hourly basis. The retainer also provided "that, in the event relief is obtained through settlement . . . , the Firm is entitled to seek and take all reasonable steps to secure any unpaid attorneys' fees and costs." The Firm charged Plaintiffs hourly rates based on position as follows: $650 for Partners, $450 for Senior Associates, $300 for Junior Associates, and $150 for Paralegals and Interns. The rates in the engagement agreement reflected a discount of up to 41% off the Firm's 2023 standard rates, which are reasonable market rates for the Washington, D.C. area. The Firm sent Plaintiffs detailed invoices, each of which included a detailed chronology that identified, on a day-by-day basis, each attorney, paralegal, and intern who had performed work on the case; described the nature of the work performed; and reported the time taken in performing it. The invoices were

---

[3] The Firm represented the plaintiff in *SMOC v. Town of Framingham*, No. 1:07-cv-12018 (D. Mass), which settled for $1 million in 2010. The few other fair housing cases in the First Circuit with reported settlements or verdicts involved significantly lower amounts. *See, e.g.*, *United States v. DeRaffele*, No. 16-10991 (D. Mass 2017) (jury verdict awarding $8,500 in damages to Plaintiffs and $35,000 to the United States); *Astralis Condominium Ass'n. v. HUD*, 620 F.3d 62 (1st Cir. 2010) (enforcing ALJ award of $25,000 in emotional damages related to disability discrimination).

prepared shortly following the end of each calendar month and were, through the end of 2023,[4] promptly transmitted to Plaintiffs.

This case was vigorously litigated on both sides. The Firm's work on the case included prevailing on Defendants' motions to dismiss and motion for summary judgement; overcoming Defendants' motion to quash the subpoena of Natick Town Counsel, Karis North; reviewing tens of thousands of documents from Defendants and various third parties; taking and defending ten depositions; beginning trial preparation; and participating in several settlement conferences. As expected, trial preparation was particularly resource intensive. The Firm identified 316 potential trial exhibits and 29 potential witnesses, designated deposition testimony for four witnesses, and conducted preliminary witness interviews. The Firm then reviewed and interposed objections to Defendants' 105 trial exhibits as well as to Defendants' proposed witnesses and deposition designations.

As a result of the Firm's thorough and successful advocacy on behalf of Plaintiffs, the Firm accrued a total of $1,183,122.136 in fees and costs through January 16, 2024 (the date the parties agreed to a settlement in principle).[5] Plaintiffs have paid the Firm a total of $311,199.86 and have an outstanding balance of $871,922.27. The Firm recognizes that—despite the settlement being one of the largest settlements paid by a municipality in a fair housing matter—Plaintiffs had hoped to recover a larger portion of their alleged damages. Therefore, although

---

[4] The Firm has yet to issue an invoice for the work performed between January 1, 2024 and January 16, 2024 due to the ongoing breakdown in the attorney–client relationship. The Firm informed Plaintiffs on February 21, 2024 that their arrearage was more than $800,0000, which includes the $124,133.24 in fees and costs incurred during that period.

[5] The Firm is prepared to file copies of their monthly statements from the beginning of the case through January 16, 2024 should the Court so order, but will consult with Plaintiffs and their counsel prior to doing so.

M.G.L. c. 221, § 50 entitles the Firm to recover the full $871,922.27, it is seeking to recover only $400,000.00, or roughly 46% of the total amount owed.

For the reasons set forth above, an order should enter determining and enforcing the charging lien for Attorneys' fees in the amount of $400,000.00.

Respectfully submitted,

Date: April 8, 2024

*/s/ Michael Allen*
Michael Allen
*Admitted pro hac vice*
Edward Olds
*Admitted pro hac vice*
Emily Curran
*Admitted pro hac vice*
Tara Ramchandani
*Admitted pro hac vice*
Lila Miller
*Admitted pro hac vice*
RELMAN COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
(202) 728-1888, ext. 603
mallen@relmanlaw.com
tolds@relmanlaw.com
ecurran@relmanlaw.com
tramchandani@relmanlaw.com
lmiller@relmanlaw.com

## **LOCAL RULE 7.1 CERTIFICATION**

The undersigned counsel hereby certifies that he has conferred in good faith with counsel for the Plaintiffs regarding the foregoing *Motion to Enforce Attorneys' Fees Lien* and have been unable to resolve or narrow the issue at hand.

Date: April 8, 2024                                         */s/ Michael Allen*
                                                            Michael Allen

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 8th day of April, 2024, a true copy of the foregoing *Motion to Enforce Attorneys' Fees Lien* was filed through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies shall be served upon anyone indicated as a non-registered participant.

Date: April 8, 2024                                                  */s/ Michael Allen*
                                                                                                         Michael Allen